*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. J. BEAN, Minor.

UNPUBLISHED
March 17, 2026
1:45 PM

No. 377131
Wayne Circuit Court
Family Division
LC No. 2025-000118-NA

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to AJB under MCL 712A.19b(3)(b)(*i*) (parent sexually abused the child's sibling), (j) (reasonable likelihood of harm if returned to parent), and (k)(*ii*) (criminal sexual conduct involving penetration committed by parent against the child's sibling). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the legal father of AJB. In September 2025, Children's Protective Services investigated allegations that respondent sexually abused AJB's sixteen-year-old half-sibling, AB. Respondent was in a relationship with AJB and AB's mother that began when AB was approximately seven years old.[1] During a forensic interview, AB disclosed that respondent gave her alcohol and raped her while the two were out of town without AJB or the mother in April 2024.

In March 2025, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights at the initial disposition under MCL 712A.19b(3)(b)(*i*), (g) (failure to provide proper care or custody when financially able to do so), (j), and (k)(*ii*). Following the preliminary hearing, the trial court found that probable cause existed to authorize the petition.

---

[1] The petition did not name the mother as a respondent and the mother is not a party to this appeal. Accordingly, we simply refer to respondent-father as "respondent" and nonrespondent mother as "the mother."

AJB was released to the mother under the supervision of the DHHS. The trial court ordered that respondent's visitation with AJB be supervised.

At the adjudication, AB testified that she and respondent traveled to northern Michigan in April 2024 to visit respondent's son, LG. On the first night, AB and respondent both slept in separate beds in a camper parked in the front yard. On the second night, AB consumed alcohol for a few hours while sitting around a campfire with respondent and his ex-wife, JG. AB became intoxicated. Respondent and JG escorted AB to the camper to go to sleep. At some point, respondent entered the camper, lied down next to AB, and began rubbing her leg. He pulled down her pants and underwear, raped her, and then rolled over and fell asleep. Respondent and AB left to return home the following afternoon. During the drive home, respondent warned AB not to tell anyone about what had happened because she would "lose everything." This warning effectively dissuaded AB from telling her mother about the incident.

JG adamantly denied serving AB alcohol at any time that weekend. JG also denied that either AB or respondent had slept in the camper during their stay. Rather, JG testified that AB slept in the house on the bottom bunk of JG's daughter's bunkbed, while respondent slept on the couch in the living room.

Respondent denied raping AB or giving her alcohol. He maintained that he slept on the couch in the living room both nights and denied sleeping in the camper. Respondent further denied that any significant conversations took place on the drive home because AB "pretty much slept the whole time." Respondent testified that he played a father-like role in AB's life.

The trial court found by a preponderance of the evidence that it had jurisdiction over AJB. The trial court concluded that anticipatory neglect could be inferred from the fact that respondent was a father figure to AB for a number of years, thereby establishing a sufficient basis to exercise jurisdiction over AJB. The trial court also found that there was clear and convincing evidence to support termination of respondent's parental rights to AJB under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*).

In analyzing the best-interest factors, the trial court acknowledged the bond between respondent and AJB, his apparent ability to provide stability and permanency for her, and his compliance with visitation. The trial court also recognized that AJB was placed with a relative—her mother. The trial court concluded that termination of respondent's parental rights was in the best interests of AJB because the substantial risk of harm posed by a decision not to terminate was simply too great. This appeal followed.

## II. STANDARDS OF REVIEW

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). We also review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44

(2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "We give deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## III. STATUTORY GROUNDS

Respondent argues there was insufficient evidence to terminate his parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

Under MCL 712A.19b(3)(b)(*i*), a trial court may terminate a parent's parental rights to a child if the court finds by clear and convincing evidence that the parent's act caused sexual abuse of the child's sibling and there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home. *In re Sours*, 459 Mich 624, 634-635; 593 NW2d 520 (1999). Uncorroborated testimony of a victim of sexual abuse can establish by clear and convincing evidence that sexual abuse was committed. See *In re HRC*, 286 Mich App at 460-461.

The trial court found that respondent sexually assaulted AB—AJB's half-sibling. The record supports this finding. AB testified that respondent penetrated her vagina with his penis. Although respondent claims that AB was not credible and fabricated the events, the trial court found AB's testimony "extremely credible." We defer to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *Id.* at 459. The trial court further found that, on the basis of respondent's sexual assault of AB, there was a reasonable likelihood that AJB would suffer abuse in the foreseeable future if she were placed in respondent's care. Respondent's treatment of AB is probative of how he will treat AJB. *Id.* at 460-461. We are not left with a definite and firm conviction that the trial court made a mistake by finding that termination was proper under MCL 712A.19b(3)(b)(*i*).

Because the trial court did not err by holding that statutory grounds for termination had been proven under MCL 712A.19b(3)(b)(*i*), we need not address the additional statutory grounds upon which the trial court based its decision. *Foster*, 285 Mich App at 633.

## IV. BEST INTERESTS

Respondent also contends it was not in the best interests of AJB for the trial court to terminate his parental rights. We disagree.

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance

of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). "[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *Id*. at 89.

"The trial court should weigh all the evidence available to determine the child[]'s best interests," and it should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (cleaned up). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. A child's safety and well-being and the risk a child might face if returned to the parent's care are also relevant to the best-interest determination. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). "Relative," as defined by MCL 712A.13a(1)(j)(*i*), has been interpreted to include biological parents. *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10.

The trial court acknowledged the bond between respondent and AJB, respondent's evident ability to provide permanence and stability for AJB, and respondent's participation in supervised visitation since she left his care. And, consistent with the trial court's obligations, the trial court considered AJB's placement with a relative—her mother—while proceedings were pending. But the trial court concluded that termination of respondent's parental rights would be in the best interests of AJB because a "wait-and-see" approach to her well-being was not a meaningful alternative. The trial court concluded that respondent's "ability and judgment and decision making prevents him or provides that he doesn't have the appropriate parenting ability to parent [AJB]."

Although respondent and the mother were not married, respondent testified that he had been in AB's life since she was seven years old, and he was like a father to her. But respondent took advantage of his role and committed a heinous act of sexual assault against AB. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Although AB is not respondent's child, respondent's sexual assault of AB was "an especially egregious violation of a child who had looked to respondent for care and protection as a father figure." *Id*. at 322. Respondent's treatment of AB is probative of how he may treat seven-year-old AJB. See *id*.

A preponderance of the evidence in the record supports that termination was in AJB's best interests. Although there was no evidence that respondent abused AJB, we are not left with a definite and firm conviction that the trial court made a mistake by concluding that the factors that

weighed against termination of respondent's parental rights were outweighed by the risk that he may harm AJB.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Philip P. Mariani